```
     J5K7ABOC

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   HICHAM ABOUTAAM,

 4                  Plaintiff,

 5           v.                              18 Civ. 8995 (ALC)

 6   AHMAD E. ASSAAD
     and PRIDE INVESTS SAL,
 7
                    Defendants.
 8
     ------------------------------x
 9                                           New York, N.Y.
                                             May 20, 2019
10                                           2:15 p.m.

11   Before:

12                       HON. ANDREW L. CARTER

13                                           District Judge

14                            APPEARANCES

15   EMERY CELLI BRINCKERHOFF & ABADY LLP
          Attorneys for Plaintiff
16   BY:  RICHARD EMERY
          ANDREW WILSON
17
     FERBER CHAN ESSNER & COLLER LLP
18        Attorneys for Defendants
     BY:  ROBERT KAPLAN
19

20

21

22

23

24

25
```

1         (Case called)

2         (In open court)

3         MR. WILSON:  Good afternoon, your Honor.  My name is
4    Andrew Wilson of the law firm Emery Celli Brinckerhoff & Abady
5    for the plaintiff.  I'm here with my partner Richard Emery.

6         THE COURT:  And for the defendant?

7         MR. KAPLAN:  Robert Kaplan of Ferber Chan Essner &
8    Coller, LLP for the defendant.

9         THE COURT:  OK, good afternoon.  We're here for a
10   premotion conference.  I have seen the parties' submissions.

11        My first question is have there been any settlement
12   discussions between the parties?  I know according to the
13   plaintiff's complaint there is a previous settlement agreement,
14   or discussion, or understanding regarding the real estate
15   investments, but since this litigation has started have there
16   been any further settlement discussions between the parties?

17        MR. WILSON:  No, your Honor.

18        THE COURT:  OK.  And is there a reason for that?  I'm
19   just trying to get a sense as to why that's the case.

20        MR. WILSON:  Your Honor, we're open to having that
21   conversation.  I think the reason that we're here today is
22   because of a break-down in communication.  There was what we
23   understood to be a settlement of these parties' disputes, and
24   then communication completely ceased, and so we were compelled
25   to bring suit to try to avail our client of his rights here.

1   But certainly the beginning and middle of this case has
2   certainly been about settlement.
3           THE COURT:  All right.  Defense counsel?
4           MR. KAPLAN:  I really have nothing to add on the
5   subject, your Honor.  I know that since this action has
6   commenced there has not been any communication between the
7   parties.
8           THE COURT:  And do you think that your client would be
9   interested in settling this matter?  Without getting into
10  numbers or anything.  I guess what I'm wondering is this.  It
11  seems to me at one point there was at least a business
12  relationship between these two individuals, and that seems to
13  have soured.
14          Before this litigation continues -- because litigation
15  is a process that doesn't tend to draw people closer
16  together -- and before this heats up even more, it might be
17  worth exploring the possibility of settlement.  Let me just
18  find out from defense counsel if you think your client might be
19  interested in that possibility.
20          MR. KAPLAN:  Well, your Honor, without getting into it
21  in any depth, I can only say that our communications with our
22  clients, they have not really evidenced any interest in a
23  settlement.
24          THE COURT:  OK.  Let me get a sense from plaintiff's
25  counsel.  I didn't see it in the complaint.  I know that one of

1    the defendant's contention is that this needs to be in the
2    complaint.  Without getting into whether or not this is a
3    necessary element of the complaint, what is the amount of money
4    that was allegedly contributed to this charity that we're
5    talking about here?
6              MR. WILSON:  It's $30,000, your Honor, and it is in
7    the complaint, it's in paragraph 21, I believe.
8              THE COURT:  All right.  So it's $30,000 for the
9    charity, $800,000 for this settlement agreement, and what else
10   are we looking at here?
11             MR. WILSON:  Well, the third category of claims
12   relates to expenses for this real estate business, purporting
13   to sell real estate in the south of France.  Mr. Aboutaam was
14   the individual in New York who set up the real estate, the
15   commercial space that they occupied, and he has continued to
16   pay amounts on that to about $5,000 a month.  So when we filed
17   the complaint, it was around $25,000, and that has continued to
18   accrue.
19             THE COURT:  And tell me more about this last issue
20   here with this rental fee, this lease agreement.  What's going
21   on here?  Why is this continuing to accrue?
22             MR. WILSON:  Well, Pride Invests was a company that
23   was created as an agreement between these two parties, with the
24   promise of selling land that Mr. Assaad said he owned in the
25   south of France.  And in order to have a platform to do that

1   the parties agreed to rent commercial real estate in New
2   York -- I think it's on the Upper East Side -- where they have
3   a space where they could meet with clients and show diagrams,
4   etcetera for this real estate project.  And Mr. Al Assaad said
5   they would split the expenses evenly, and Mr. Aboutaam has
6   invested the amount, and the entities signed the lease in New
7   York, and Mr. Al Assaad never contributed anything to that.  So
8   the amount of outstanding -- Mr. Al Assaad's share of the lease
9   is about $25,000.
10           THE COURT:  And what's going on with that space
11  currently?
12           MR. WILSON:  I think in the last three or four months
13  I believe that rent has ceased being paid, and I don't know
14  whether they are in default and therefore being evicted or
15  whether there has been any discussions with the landlord.
16           THE COURT:  OK.  Defense counsel, do you have any
17  information on that?
18           MR. KAPLAN:  None, your Honor.  On that lease issue?
19           THE COURT:  Yes.
20           MR. KAPLAN:  No, I don't.  I did just want to chime in
21  on the plaintiff's allegations as to his damages in the first
22  cause of action.
23           THE COURT:  OK.
24           MR. KAPLAN:  Quoting from paragraph 21 of the amended
25  complaint, "Mr. Aboutaam made contributions of his own to SNG

1    that exceeded $30,000 in both direct donations and the donation

2    of artwork for auction at the Yale Club on May 21, 2014."

3              And if you look at the first cause of the pleadings

4    under the first cause of action, as well as the ad damnum

5    clause, they allege damages in an amount to be determined on

6    the first cause of action.

7              THE COURT:  Right.  OK.  And, plaintiffs, do you have

8    anything to add on that?  Because that was my understanding as

9    well, that it wasn't a set amount that was listed in the

10   complaint but that it exceeded $30,000.  But are you saying

11   that the amount is approximately $30,000 as opposed to just

12   simply exceeding $30,000?

13             MR. WILSON:  Yes, your Honor.  The nature of this

14   contribution was that Mr. Al Assaad gave his time to set up

15   these events.  He contributed money.  He contributed art to try

16   to support the charity.

17             I'm sorry.  Our client, the plaintiff, contributed his

18   own time, effort, funds, and so we identified $30,000 as the

19   approximate amount, but the reason we say it's to be determined

20   at trial is because the trier of fact could determine the value

21   of Mr. Aboutaam's time as, you know, greater or less than that,

22   but the hard contribution in terms of cash and art is

23   approximately 30,000.

24             THE COURT:  OK.  Let's just go off the record for a

25   second and just talk about settlement briefly, if counsel are

J5K7ABOC

1    OK with that.  Does that work for plaintiff and defendant?
2             MR. WILSON:  Yes, your Honor.
3             MR. KAPLAN:  Sure, your Honor.
4             THE COURT:  OK.  Let's go off the record.
5             (Discussion held off the record)
6             THE COURT:  Back on the record.  We had an
7    off-the-record discussion about settlement.  I encouraged the
8    parties to go down that path.  Here is what we will do.  I will
9    refer this matter to Magistrate Judge Netburn for general
10   pretrial supervision, including settlement, and I'd ask the
11   parties to reach out to Judge Netburn's chambers, set up an
12   initial conference, or set up probably even before that perhaps
13   a settlement conference.  And I'd ask the parties to give me a
14   joint status report in 60 days.  In that status report, let me
15   know whether or not the parties have settled.  If the parties
16   haven't settled, or the parties want more time to go down the
17   path of settlement, let me know that, and, if not, give me a
18   proposed briefing schedule on the defendant's anticipated
19   motions to dismiss.
20            So, 60 days from now would be when, Tara?
21            DEPUTY COURT CLERK:  It's going to be the 22nd of
22   July.
23            THE COURT:  July 22.
24            THE COURT:  Anything else from plaintiff's counsel.
25            MR. WILSON:  No, your Honor.

J5K7ABOC

1          MR. KAPLAN:  No, your Honor.
2          THE COURT:  OK, we are adjourned.  Thank you.
3          (Adjourned)